HARTFORD ACCIDENT & INDEMNITY COMPANY, Respondent, *v.* BANK OF NEW YORK, Appellant, Impleaded with CENTRAL HANOVER BANK AND TRUST COMPANY and Others, Defendants.

First Department, January 24, 1941.

*Andrew Eckel* of counsel [*William F. Giesen* with him on the brief; *McCormick & Eckel,* attorneys], for the appellant.

*George A. Dickinson* of counsel [*Murray D. Welch* with him on the brief; *Tibbetts, Lewis, Lazo & Welch,* attorneys], for the respondent.

GLENNON, J. A stock brokerage firm known as Butler, Herrick & Marshall had a checking account with the appellant, Bank of New York, formerly called the Bank of New York and Trust Company. One Max Friedman was employed by the brokerage firm as an assistant cashier. Between the months of March, 1932, and March, 1938, Friedman embezzled and stole from his employers approximately $128,000.

The plaintiff surety company about January, 1936, issued its bonds insuring the brokerage firm against the criminal and wrongful acts of its employees, including Friedman. Upon the discovery of the defalcations of Friedman, a claim was filed by the brokerage firm with plaintiff, and as a result the firm's loss, sustained because of Friedman's misconduct, was paid in full. It is alleged in the complaint that " the plaintiff succeeded by way of subrogation to all the rights, causes of action, and claims for damages or losses that the said firm of Butler, Herrick & Marshall had against the defendant herein, among others, growing out of the actions of the said Max Friedman."

This action was brought to recover on three checks drawn by Butler, Herrick & Marshall on the appellant bank which were deposited in two instances in the firm's account with the appellant, and in one in its account with the Central Hanover Bank and Trust Company. We are concerned only on this appeal with the second, third and fourth causes of action. With the exception of dates and the amounts demanded they are almost identical. Therefore, what we say with reference to the second cause of action will apply with equal force to the third and fourth causes of action.

It must be borne in mind that no loss was sustained directly by the firm by reason of the issuance, alteration or deposit of the checks in suit. It is claimed by the plaintiff, however, that the procedure adopted enabled Friedman to divert funds of his firm. In fact it is alleged that the appellant " unwittingly " permitted Friedman to accomplish his purpose. The practice which was adopted by Friedman with reference to the three checks in suit was substantially the same. The checks were signed by one of the members of the brokerage firm and made payable to De Coppet & Doremus, another brokerage firm. They were not delivered to the latter. Friedman took the checks, added the words " or

ourselves " on the face of each and then after affixing a rubber stamp indorsement as follows: " Pay to the order of Bank of New York and Trust Co. Butler, Herrick & Marshall," he deposited them to the credit of his firm. It is asserted in the moving affidavit and not denied that " It is the practice of stockbrokers to draw checks which are intended to be used on a given day shortly after the commencement of business. All such checks as are not used are deposited to the credit of the firm account rather than being destroyed. That practice obtained between Butler, Herrick & Marshall and defendant on the dates in question."

It is contended by the plaintiff that the alterations of the checks enabled Friedman to cover up his peculations of cash in the firm's office.

We do not believe that either the plaintiff or Butler, Herrick & Marshall has or had any cause of action arising out of the transactions against the appellant bank. It would require a stretch of the imagination to say that the bank was negligent in accepting checks in the manner in which it did when the brokerage firm made it a practice to deposit undelivered checks in its firm account rather than to destroy them. There is nothing, it seems to us, that would put the bank upon notice that Friedman would be placed in a position to steal other funds from his firm by the practice he adopted.

The relationship between a bank and its depositor is simply that of debtor and creditor. It is contractual. Judge O'BRIEN in defining the relationship in *Shipman* v. *Bank of State of New York* (126 N. Y. 318) said in part: " The various deposits of money made from time to time by the plaintiffs with the defendant created the relation of debtor and creditor, and the law implies a contract on the part of the defendant to disburse the money standing to the plaintiffs' credit only upon their order and in conformity with their directions. * * *."

The checks were not presented for payment by a third party and payment was not refused. They were simply presented for deposit in the maker's account and were accepted and deposited. Nor was there any wrong, in so far as this appellant is concerned, connected with the transactions since no funds of the depositor were diverted thereby from the depositor's account. To argue that Friedman was enabled by the acceptance of the deposits to steal other moneys from his employers by manipulating the firm's private books is beside the point. The fact is that no damage was sustained by the firm of Butler, Herrick & Marshall by the appellant's acceptance of the checks for deposit. Since that is so, this plaintiff has no right of recovery by virtue of subrogation or

otherwise against the appellant bank predicated upon the causes of action numbered second, third and fourth.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted.

MARTIN, P. J., O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion granted.